IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LAKNER V. LAKNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JESSICA E. LAKNER, APPELLANT,

V.

DAVID A. LAKNER, SR., APPELLEE.

Filed February 3, 2015.    No. A-14-248.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Reversed and remanded with directions.

Lawrence G. Whelan and Dennis G. Whelan, of Whelan Law Office, for appellant.

No appearance for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Jessica Lakner appeals the Douglas County District Court's denial of her motion to vacate a default decree of dissolution that she claims was entered without notice to her. We agree that the district court abused its discretion by not vacating the default decree; we reverse and remand with directions.

BACKGROUND

David Lakner, Sr. and Jessica were married on December 31, 1999. One child was born of the marriage, Jaxson, born in 2004. David filed a complaint to dissolve his marriage to Jessica on December 17, 2012. David's complaint indicated that the parties and Jaxson had resided for the past 5 years at 2002 South 7th Street, Omaha, Douglas County, Nebraska. A voluntary appearance prepared by David's attorney was signed by Jessica on December 31, and was filed with the court on January 4, 2013.

- 1 -

A "Stipulated Temporary Order" prepared by David's attorney was "approved as to form and content" by Jessica and was signed and filed by the district court on January 9, 2013. This temporary order awarded David and Jessica joint legal custody of Jaxson, and awarded "primary possession" of Jaxson to Jessica subject to David's "liberal parenting time," which was described in a subsequent paragraph entitled "Parenting Time." David's parenting time was addressed for "[w]hile in Nebraska," and "[w]hen living out of state;" both referring to David's residence, not Jaxson's. David was ordered to pay $325 per month in child support, and the parties were to split daycare costs equally. David was to maintain health insurance on Jaxson, and the parties were to equally split unreimbursed medical costs after Jessica paid the first $480 in such costs per year. Jessica was awarded "exclusive possession of the family residence" located at 2002 South 7th Street in Omaha, Nebraska, subject to her responsibility for payment of the mortgage, taxes, utilities and costs associated with the house. In the event Jessica was unable to make such payments, the house was to be put up for sale, with the equity in the home to be split "wherein each party shall receive approximately $13,100.00." Each party was awarded the vehicle in his or her possession, and each party was "awarded the retirement, savings, checking and other bank accounts in their own name." Finally, the parties were to file their 2012 taxes jointly and split any refund or liability equally, alternate claiming Jaxson as a tax exemption, and each party was to pay his or her own attorney fees and costs.

Following the filing of the temporary order discussed above on January 9, 2013, the next action in this case according to our transcript is what appears to be a form document created on or about August 16, entitled "Proposed Scheduling Order." This document does not contain a file-stamp from the clerk of the district court. Rather, there is a circular stamp indicating, "Not 4-3 Compliant August 16[,] 2013[,] District Court Administration." (We note that the local rules of the district court for the Fourth Judicial District, applicable here, provides at Rule 4-3 certain rules pertinent to domestic relations cases, including requirements related to mediation. See, Rules of Dist. Ct. of Fourth Jud. Dist. 4-3 (rev. 1995)). This form document reflects that a scheduling conference hearing was set for September 3, and that "[t]he party submitting this form shall proper [sic] notify the other party or parties." It is not clear who submitted the form. The name and address for David's attorney is typed on the bottom left side of the document, and Jessica's name and address is typed at the bottom right of the form. The only handwritten signature on the document is that of David's attorney, which appears above his typed name.

The next document filed-stamped by the clerk of the district court occurred on August 27, 2013, when David's attorney filed a "Motion for Default," stating that (1) the complaint had been filed on December 17, 2012, (2) that a voluntary appearance was filed on December 31, 2012, (3) that Jessica "has not responded in this matter," and (4) that David was entitled to a default judgment. Although not noted in the caption of that motion, on its second page there is a "Notice of Hearing," showing that the motion would be heard on September 5, 2013. The certificate of service reflects that on August 26 a copy of the motion was mailed to Jessica at the 2002 South 7th Street address.

Only David and his attorney appeared for the default hearing scheduled on September 5, 2013, and based on David's testimony, he was living in Wisconsin at that time. According to David, he knew at the time he filed for divorce or soon thereafter that he would be moving to Wisconsin for a new job. David testified about the stipulated temporary order entered in January,

and in response to his attorney's question about whether the "terms of the temporary order that were stipulated to are basically the terms that are within the proposed decree," David replied, "Yes." David noted that the parenting plan was more extensive than the schedule in the temporary order. Regarding the 2002 South 7th Street residence, David testified that it would be awarded to Jessica, that he had helped her refinance the home, and that they both agreed in the temporary order that there would be $13,100 in equity that they each would be awarded. David agreed through his attorney's questioning that he would get his share of the equity "at the tail end" of his child support, "get[ting] a credit instead of taking any money away from her now or asking her to come up with any money," and that he would pay his child support "on a monthly basis at this time." As to the amount of child support reflected in the proposed decree, David testified that this changed from the time of the stipulated temporary order because he had new health insurance for Jaxson which cost him $400 per month just to cover Jaxson. (The proposed decree reflected that only $182 per month was owed in child support after deducting $400 for health insurance from what would have otherwise been a $582 per month obligation from David.) David also answered affirmatively when asked if Jessica was "given proper notice at her house, 2002 South 7th Street," . . . "[on] the 26th of August, [when] notice was sent to her?" When asked, "And do you have any reason why she's not here today?" David replied "No."

A Decree of Dissolution of Marriage was filed on September 6, 2013. The decree was prepared by David's attorney and was "Approved as to Form and Content" by David. Although the decree preserved legal and physical custody as set forth in the stipulated temporary order, provisions related to child support, daycare, property and parenting time were changed. Examples of changes included: child support was reduced from $325 per month to $182 per month; credit of $13,500 for David's share of the house equity was to be applied as a credit to his child support obligation; daycare was no longer equally split but was to be paid for by the parent incurring such costs while the child was in his/her possession; additional parenting time was awarded to David; and Jessica was to be equally responsible in providing transportation for regular and holiday parenting time (David was living in Wisconsin; Jessica in Nebraska). Jessica filed a "Motion to Vacate and/or Modify" on December 5 claiming she never received notice of the default hearing. After a hearing on that motion on February 20, 2014, the district court entered an order on March 6 denying the motion to vacate but indicating that the matter would proceed on Jessica's "Motion to Modify." Jessica appeals from the denial of her motion to vacate.

ASSIGNMENTS OF ERROR

Jessica assigns as error that the district court abused its discretion by denying her motion to vacate the default decree.

STANDARD OF REVIEW

In reviewing a trial court's action in vacating or refusing to vacate a default judgment, an appellate court will uphold and affirm the trial court's action in the absence of an abuse of discretion. *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for

disposition. *Id.* A much stronger showing is required to substantiate an abuse of discretion when a judgment is vacated than when it is not. *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004).

ANALYSIS

Jessica claims that the district court erred by denying her motion to vacate because Jessica had promptly filed the motion and presented a meritorious defense. Jessica asserts that the district court "focused solely on notice," and "did not make any findings as to whether [Jessica] properly sought relief and presented a meritorious defense." Brief for appellant at 6. We find there is merit to Jessica's argument.

*Motion to Vacate.*

Jessica's motion to vacate was heard on February 20, 2014. David did not appear at this hearing; however, Jessica appeared with counsel. Prior to the filing of the motion to vacate, Jessica had proceeded *pro se*. Jessica testified that she was not aware that a scheduling order had been filed in the case, and that she did not sign such an order. As noted in the background section earlier, the proposed scheduling order in our record shows that only David's attorney actually signed the order, and further, that the "party submitting this form shall proper [sic] notify the other party or parties." Jessica claims that she only became aware that a decree and parenting plan had been filed because she received reduced child support. Upon that happening, she contacted David, and he told her that "he just supplied his wages to the State and they lowered it." This prompted Jessica to contact "Child Support" where she was told that David received a credit of $13,100 but that office could not explain why. Jessica claimed she did not receive notice of the default hearing, nor did she receive a copy of the scheduling order. Although no specific dates were provided by Jessica, she also claimed that prior to the default hearing, she had contacted David's attorney but did not receive a return phone call.

As to the substantive concerns within the decree, Jessica testified that joint custody was no longer workable because David now lived out of state, and she also took issue with the decree requiring her to have to pay an equal share of transportation costs since David chose to move out of state. Jessica also took issue with the incomes used in the child support calculation, as well as the health insurance deduction David claimed in his calculation. As to the home, Jessica testified that the home was held only in David's name and she was not awarded ownership in the decree. Additionally, she testified that since the entry of the decree, David had threatened to "kick [her] out if [she] missed a payment." Jessica testified about two bank accounts with $5,500 in them and David's retirement account with approximately $25,000 in it; she did not receive any portion of these assets. The decree also made each party responsible for child care when the child is in their respective custody, which Jessica did not believe to be fair since David lives out of state and sees their child infrequently. Jessica also challenged the split on unreimbursed medical expenses.

On cross-examination, Jessica was asked if she received a letter from David's attorney in December 2012 addressed to 2002 South 7th Street. Jessica stated that she had received it, but that it was not mailed to her; rather, she claimed David's attorney sent it to her through David. Jessica acknowledged receiving a "notice of intent" [to dismiss the case] that was sent by the

"District Court Administrator," and when she received it, she tried to contact David's attorney's office "and nobody returned my call." Jessica stated she received no notice about the default hearing from David's attorney, and if she had, she would have been there. When asked by David's attorney if she was aware the case was active, Jessica responded, "Yes, that's why I tried to call you four times."

On appeal, Jessica argues that the district court erred in relying on *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007), and suggests that *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004) is more applicable. *Miller* does support Jessica's assertion that when a meritorious defense is presented, a default judgment should be set aside so the case can be resolved on the merits. We note that *Buckhalter* also sets forth that same proposition, and we will discuss that further after our consideration of *Miller*. In *Miller*, the Nebraska Supreme Court stated:

> Generally, where a judgment has been entered by default and a prompt application has been made at the same term to set it aside, with the tender of an answer or other proof disclosing a meritorious defense, the court should on reasonable terms sustain the motion and permit the cause to be heard on the merits.

> This court has further stated:

> It is the policy of the law to give a litigant full opportunity to present his contention in court and for this purpose to give full relief against slight and technical omissions. On the other hand, it is the duty of the courts to prevent an abuse of process, unnecessary delays, and dilatory and frivolous proceedings in the administration of justice. . . Mere mistake or miscalculation of a party or his attorneys is not sufficient, in itself, to warrant the refusal to set aside a default judgment, when there is a good defense pleaded or proved and no change of position or substantial misjustice [sic] will result from permitting a trial on the merits.

*Miller*, *supra*, at 334-35, 682 N.W.2d at 707-08 (citations omitted).

The underlying facts set forth in *Miller* indicate that a money judgment was obtained by the plaintiff against the defendant in a professional negligence action. The plaintiff then initiated a garnishment action against an insurance company, alleged to have issued a professional liability insurance policy providing coverage for the claim. The insurance company claimed it was not properly served before entry of judgment in December 2001, and that when it learned of the judgment, it filed a special appearance in January 2002 (for lack of proper service) and also asserted a defense to the garnishment proceeding. The Supreme Court concluded that the issue in the case was

> whether the court erred in not setting aside the prior default judgment on one of two alternate grounds: (1) that [the insurance company] had demonstrated the existence of a meritorious defense or (2) that the judgment was void because the district court lacked personal jurisdiction over [the insurance company] at the time of entry, due to a defect in service of process.

*Id.* at 334, 682 N.W.2d at 707.

In considering those alternate grounds, the *Miller* court decided that the "critical issue . . . is whether [the insurance company] made the requisite showing that it has a meritorious defense to the garnishment proceeding." *Miller v. Steichen*, 268 Neb. 328, 335, 682 N.W.2d 702, 708 (2004). The Supreme Court determined that the insurance company had "demonstrated that it had a defense which is 'recognized by the law and is not frivolous'" and is thus 'worthy of judicial inquiry,'" and accordingly, reversed the district court and remanded with directions to vacate the default judgment. *Id.* at 336, 682 N.W.2d at 709 (citation omitted). The *Miller* court further concluded that it was not necessary to determine whether or not the insurance company was properly served since it had already concluded the district court erred in not setting aside the default judgment on the ground that the insurance company had demonstrated a meritorious defense.

Applying *Miller* to the present case, it appears that the district court only considered whether proper service was made on Jessica, and that the court failed to consider the more critical factor of whether Jessica had presented a meritorious defense with regard to the motion to vacate. While the district court noted that there were valid issues raised by Jessica, rather than vacate the decree on the basis that a meritorious defense had been presented, the trial court instead erroneously converted the action into a modification proceeding as we will address next. To the extent Jessica's motion to vacate was timely made, the district court had the inherent authority to vacate the decree.

Jessica's motion to vacate the September 6, 2013, default decree was filed on December 5, so it was filed within the "same term" as described in *Miller* above. The local rules of the district court for the Fourth Judicial District, applicable here, provide that the term of the court runs from January 1 to December 31 of the calendar year. See, Rules of Dist. Ct. of Fourth Jud. Dist. 4-1. A court has inherent power to vacate or modify its own judgments at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014).

Accordingly, the district court had the inherent power to vacate or modify the September default decree through December 31, 2013. Although Jessica filed her motion to vacate within that term, no order was entered until after the term. However, this does not change the court's inherent power to vacate based upon the extension of time granted in Neb. Rev. Stat. § 25-2001(1) (Reissue 2008):

> The inherent power of a district court to vacate or modify its judgments or orders during term may also be exercised after the end of the term, upon the same grounds, upon a motion filed within six months after the entry of the judgment or order.

Jessica's timely motion preserved the district court's ability to exercise its inherent power to vacate or modify the September 6 default decree.

Based on the testimony provided by Jessica at the hearing on her motion to vacate, there was certainly proof disclosing a meritorious defense. Among other problematic issues contained within the decree as testified to by Jessica and discussed previously, such as the $13,100 credit given to David to be applied against child support, we also note that David testified at the default hearing that the house would be awarded to Jessica, yet the decree did not award her ownership, and instead only gave her rights to possession of the home. Furthermore, there is no evidence in

the record to indicate that Jessica created any unnecessary delays or behaved in a dilatory or frivolous manner in the divorce proceedings. Once the January 2013 stipulated temporary order was put in place, there does not appear to be any activity until notification from the court prompted David's counsel to schedule a default hearing for September 5, notice of which a certificate of service indicates was mailed to Jessica on August 26, but which Jessica claims she did not receive. Additionally, Jessica claimed that she called David's attorney four times, but no one contacted her.

At the February 20, 2014, hearing on the motion to vacate, the district court stated, "[T]he way I read *Buckhalter* is that there wasn't any process violated. I understand she said that she didn't receive it, but I go by what's in the Court file that notice was sent to her." The district court's decision to deny the motion to vacate was premised solely on its conclusion that notice was given to Jessica based upon what was reflected in the certificate of service. However, notice was only one component evaluated in *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007); in addition, the *Buckhalter* court also evaluated whether the defendant presented a meritorious defense.

In *Buckhalter*, *supra*, the State of Nebraska brought an action against the defendant to establish paternity of a minor child and to obtain an order for child support. The defendant failed to answer or otherwise appear, and 17 months after the State filed the action and the defendant failed to appear numerous times for verified genetic testing, a referee found the defendant to be the minor child's father by default. The defendant claimed he did not receive notice of the evidentiary hearing to establish paternity and he therefore tried to vacate the referee's report, but was denied. On appeal, the defendant claimed the district court erred by refusing to vacate the judgment of paternity, among other things. The Nebraska Supreme Court refused to give the defendant any relief, noting that a party who is served with summons and a copy of the complaint and fails to answer or make an appearance in a case is not entitled to further notice of hearing. Additionally, the Supreme Court noted that the defendant was aware of the proceedings for 17 months yet failed to involve himself, and thus concluded he was not entitled to notice of the hearing.

In considering the motion to vacate, the *Buckhalter* court cited to *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702, (2004),and acknowledged that a timely application to set aside a default judgment should be sustained if there is proof of a meritorious defense. Further, to vacate a default judgment, the defendant is not required to show he will ultimately prevail, "but only that he has a recognized defense that is not frivolous." *Buckhalter*, 273 Neb. at 451, 730 N.W.2d at 347. The Supreme Court considered whether the defendant's private, unsubstantiated paternity test created a real controversy worthy of judicial inquiry, and concluded that the private test was insufficient, and that by failing to take the genetic testing ordered by the court, the defendant had passed up the opportunity to present a meritorious defense.

The case before us is distinguishable from *Buckhalter* in several ways. Unlike the defendant in *Buckhalter*, Jessica did enter a voluntary appearance and did join in a stipulation for a temporary order. Additionally, Jessica testified that she attempted to call David's attorney on four occasions to check on the case and that her calls were not returned. And, significantly, Jessica raised a number of issues showing problems with the filed decree, which the district court also recognized in its comments at the hearing.

As previously noted, a defendant seeking to vacate a default judgment is required to present a meritorious defense, but it is not required that the defendant show she will ultimately prevail in the action--only that she has a defense which is recognized by law and is not frivolous. A meritorious or substantial defense or cause means one which is worthy of judicial inquiry because it raises a question of law deserving some investigation and discussion or a real controversy as to the essential facts. *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004).

As in *Miller*, *supra*, we conclude in this case that the district court abused its discretion in overruling Jessica's motion to vacate given her timely filing of a motion to vacate and her presentation of a meritorious defense based upon a real controversy as to essential facts. Furthermore, the problematic issues contained in the decree as raised by Jessica in her asserted defense are not frivolous and are worthy of judicial inquiry. The September 6, 2013, decree should be vacated and the cause heard on the merits.

*Error Converting Motion to Vacate into an Application to Modify*

For the sake of completeness, we wish to address a procedural error undertaken by the court and parties by converting the motion to vacate into an application to modify. In the case before us, although Jessica's pertinent pleading is entitled, "Motion to Vacate and/or Modify," the content of that pleading requests only that the court vacate the decree entered on September 6, 2013. The motion identifies issues pertinent to lack of service and the problematic content of the decree, and in its prayer requests that the court vacate the decree, award attorney fees and costs, and for other relief deemed just and equitable.

Near the end of the February 20, 2014, hearing on Jessica's motion to vacate, the district court judge stated, "I understand she said that she didn't receive [the notice of default hearing], but I go by what's in the Court file that notice was sent to her." The judge went on to state,

> I do see that there are some issues that need to be addressed and also probably some information from Ms. Lakner that because of the way this has proceeded and this money is being credited to him with regards to child support, that that *creates a material change in circumstances* with respect to how she's even able to proceed raising the child.
>
> So because of the *Buckhalter* decision and because of what's in the file, I'm inclined to deny the motion to vacate, *proceed on the application to modify*, and then set this sooner than later with respect to trying to get these issues addressed so that -- here is the Court's concern -- and I'll give [David's attorney] -- I'll give [David] 30 days to *respond to the application to modify*.

(Emphasis added). The court then suggested the parties might reach agreements on these issues, and "[i]f not, then we can give you a disposition date for the application to modify."

On March 3, David filed an "Answer to [Jessica's] Motion for Modification" wherein he requested that the modification be limited to (1) the marital home equity being applied as a credit to David's child support obligation; (2) the failure of the decree to award ownership of the home to Jessica or provide a method where Jessica could "obtain her equity," and (3) modification of the parenting plan. David stated that beyond these three issues, "[Jessica] cannot demonstrate a material change in circumstances to address any other issues."

It appears that the court and the parties improperly converted the motion to vacate into an "application to modify" the decree. Although § 25-2001(1) provides for a district court's inherent power to "vacate or modify its judgments or orders," it should be noted that the authority to modify an existing order under this statute is different than seeking a new order modifying child custody, support, parenting time and other such matters related to children as found in § 42-364(6) (Cum. Supp. 2014) or other modifications of a decree as found in § 42-365 (Reissue 2008). Modifications of a divorce decree or parenting plan must be commenced by filing a complaint to modify. See § 42-364(6) and § 42-365. In this case, rather than vacate or make modifications to the existing decree pursuant to § 25-2001(1), the court instead converted the motion to vacate into an application to modify. As discussed, an application or complaint to modify a decree or parenting plan must be commenced by the filing of such a pleading. No such pleading exists in the record before us.

It is clear that Jessica's motion was to vacate the decree; it was not an application or complaint to modify the decree. A postjudgment motion must be reviewed based on the relief sought by the motion, not based on the title of the motion. See *Allied Mutual Insurance Co., v. City of Lincoln*, 269 Neb. 631, 694 N.W.2d 832 (2005) (document entitled "Motion for New Trial" following entry of summary judgment would not have tolled time to appeal, however, content of motion showed that relief sought was similar to motion for reconsideration, or to alter or amend, which did toll the time to appeal). In the present case, Jessica's December 5, 2013, motion sought only to vacate the September default decree; therefore, after denying the request to vacate, the district court's conversion of the motion into an "application to modify" the decree was in error. Although the court was attempting to find a means to rectify some serious concerns within the default decree, the court should have exercised its inherent power to vacate the decree, as discussed above, and allowed the parties to bring the problematic issues before the court for decision on their merits. An application or complaint to modify a decree based upon a material change in circumstances was not before the court; accordingly, any further pleadings or actions taken on the belief that the action had been converted into a modification proceeding were in error. Based upon this court's reversal on the denial of the motion to vacate, the matter should proceed on its original pleadings.

## CONCLUSION

For the reasons set forth herein, we reverse the judgment of the district court and remand the cause with directions to vacate the default judgment entered September 6, 2013, and for the original action to proceed on its merits.

REVERSED AND REMANDED WITH DIRECTIONS.